# IN THE U.S. DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

EXTREME SPORTS DIVAS, LLC

                 Plaintiff,       No. 3:11-CV-00032 (WMC/SLC)

      vs.

                        **PLAINTIFF'S MOTION FOR SUMMARY**
ELIZABETH J. MARTTILA individually **JUDGMENT**
and d/b/a SLED BITCH

               Defendant.

TO:    DEFENDANT ABOVE NAMED AND HER ATTORNEYS OF RECORD

      PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 56, Plaintiff Extreme Sports Divas, LLC ("Extreme Sports") hereby moves for an Order granting it summary judgment on each of Defendant's claims.

      This motion is based on Fed. R. Civ. P. 56, upon the memorandum of law, Proposed Statement of Fact, affidavits and other documents submitted with this motion, and upon all of the files, records and proceedings in this case.

                  KLEHR HARRISON HARVEY BRANZBURG LLP


                  By:    /s/ Brian R. Fitzgerald, Esq.
                        Lisa A. Lori, Esq.
                        Brian R. Fitzgerald, Esq.
                        1835 Market Street
                        Philadelphia, PA 19103
                        llori@klehr.com
                        bfitzgerald@klehr.com
                        (215) 569-2700 (phone)
                        (215) 568-6603 (fax)

Dated: December 1, 2011                        Attorneys For Plaintiff

# IN THE U.S. DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

EXTREME SPORTS DIVAS, LLC

|  |  |
|---|---|
| Plaintiff, | No. 3:11-CV-00032 (WMC/SLC) |
| vs. | **COUNTERCLAIM DEFENDANTS'** |
| ELIZABETH J. MARTTILA individually and d/b/a SLED BITCH | **PROPOSED FINDINGS OF FACT** |
| Defendant. | |

Pursuant to the Procedures to be Followed on Motions for Summary Judgment for the Honorable William Martin Conley, Plaintiff/Counterclaim Defendant Extreme Sports Divas, LLC ("ESD"), by and through its counsel Klehr Harrison Harvey Branzburg LLP, submits the following Proposed Findings of Fact in support of its Motion for Summary Judgment on Defendant Elizabeth J. Marttila individually and d/b/a Sled Bitch's ("Marttila") Counterclaim.

## <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

**I.      Background of ESD**

      **A.      ESD's Business And Products**

      1.      ESD, a specialty apparel company based out of Oregon, Wisconsin, is the owner of U.S. Trademark Registration Numbers 388799 for SLED DIVAS® and 3932547 for SLED DIVA®, both for use in connection with clothing. (Declaration of Wendy Gavinski, dated Dec. 1, 2011 ("Gavinski Dec.") ¶ 2; Trademark Registration Certificates for SLED DIVAS® and SLED DIVA®, attached to the Declaration of Brian R. Fitzgerald, Esquire, dated Dec. 1, 2011 ("Fitzgerald Dec." as Exhibits C and D).

1

2.      ESD is in the business of designing, marketing, and selling women's snowmobile performance gear, such as weatherproof outerwear jackets, riding bibs and pants, gloves, protective vests, weatherproof base-layer clothing, headwear, as well as shirts and snowmobile parts and accessories.  (Gavinski Dec. ¶ 3).

3.      ESD was formed and established in February 2010.  (Gavinski Dec. ¶ 4).  Wendy Gavinski is the president and founder of ESD.  ESD has no, and never had any, employees. (Gavinski Dec. ¶ ¶ 1, 5).

4.      Beginning in August or September 2010, ESD offered its goods for sale under the trademark SLED DIVAS®.[1]  (Gavinski Dec. ¶ 6).

5.      In 2011, ESD began phasing out of use of SLED DIVAS® and introducing products under the trademark DIVAS SNOWGEAR™.  (Gavinski Dec. ¶ 8).

6.      ESD primarily sells its products, at wholesale, to third party retailers, such as snowmobile or power sport dealers; these third party retailers, in turn, sell the products to end user consumers.   (Gavinski Dec. ¶ 9 ).

7.      ESD sells a lesser amount of its goods directly to consumers, through its website, www.divassnowgear.com (formerly www.sleddivas.com), and at trade shows and industry events, throughout the United States and Canada.  (Gavinski Dec. ¶ 10).  ESD's total gross sales for 2010 were approximately $40,700.00, with a total loss of income of approximately $24,000 for 2010 .  (Gavinski Dec. ¶ 28).  While sales in 2011 have moderately increased, ESD's operating expenses, including costs of goods, increased dramatically.  (Gavinski Dec. ¶ 29).  As such, ESD anticipates recognizing a substantial loss of income for 2011.  (Gavinski Dec. ¶ 30).

---

[1] ESD offered approximately one or two items for sale bearing the mark LIL SLED DIVAS™.  Sales of these products were *de minimis*.  (Gavinski Dec. ¶ 7).

2

**B.**     **ESD's Trademark Registrations**

8.     On or about March 4, 2010, ESD filed trademark applications, on an intent to use basis, in the United States Patent and Trademark Office ("PTO") for SLED DIVAS® and SLED DIVA®. (PTO dockets for SLED DIVAS® and SLED DIVA® attached to the Fitzgerald Dec. as Exhibits A and B).

9.     ESD prepared and filed these trademark applications through its counsel, Amie B. Trupke, Esquire, of Stafford Rosenbaum LLP, out of Madison, Wisconsin.  (*Id.*).

10.     The SLED DIVAS® mark was published for opposition on July 27, 2010; the SLED DIVA® mark also was published for opposition on July 27, 2010.  (*Id.*)

11.     Having received no oppositions to either mark or objections to the use or registration of the marks, the SLED DIVAS® mark was registered on the Principal Register on December 7, 2010, in International Class 25; the SLED DIVA® mark was registered on the Principal Register on March 15, 2011 in International Class 25.   (Trademark Registration Certificates for SLED DIVAS® and SLED DIVA®, attached to Fitzgerald Dec. as Exhibits C and D).

12.     On January 24, 2011, ESD filed a Trademark Application, Serial No. 85/224,658, on an intent to use basis, seeking registration of DIVAS SNOWGEAR™.  (PTO Docket for DIVAS SNOWGEAR™, attached to the Fitzgerald Dec. as Exhibit E.).

13.     On August 30, 2011, the PTO approved the DIVAS SNOWGEAR™ mark for publication, and on October 18, 2011, published the mark for opposition.  (*Id.*).

14.     No opposition to the registration of DIVAS SNOWGEAR™ has been filed as of this date. (*Id.*)

PHIL1 1820006-1

### C.    ESD's Use of DIVAS SNOWGEAR™

15.    ESD has been marketing and offering for sale snowmobile gear and related accessories containing the DIVAS SNOWGEAR™ mark since approximately July 2011. (Gavinski Dec. ¶ 20)

16.    Examples of the manner in which ESD uses the DIVAS SNOWGEAR™ mark is as follows:



4



(ESD's Catalogue and Marketing Materials, attached to the Gavinski Dec. as Exhibit 13; *see also* Gavinski Dec. ¶ 21). Other examples of ESD's uses of DIVAS SNOWGEAR™ are contained therein.

17.    ESD's products sell, at retail, for prices ranging from approximately $20.00 to $349.00. (Gavinski Dec. ¶ 22).

18.    ESD advertises its products, and its products appear, on various Internet sites, including Facebook, and in international industry magazines (US, Canada and parts of Europe), including Snowriders, SnoWest, OnSnow Magazine, SnowGoer, Snowmobile Magazine, American Snowmobiler, and SledHeads. (Gavinski Dec. ¶ 23).

**D.    ESD's WWW.SLEDDIVAS.COM Website**

19.    In or about February 2010, ESD registered the domain name www.sleddivas.com. (Gavinski Dec. ¶ 24).

20.    Until approximately September or October 2011, ESD advertised and offered its products for sale on its www.sleddivas.com site.[2] (Gavinski Dec. ¶ 25).

---

[2] The www.sleddivas.com domain currently redirects visitors to the website at www.divassnowgear.com. (Gavinski Dec. ¶ 25).

21.     At no time did ESD ever offer or attempt to sell, or have any interest in selling its sleddivas.com domain name to Marttila or anyone else. (Gavinski Dec. ¶ 26).

## II.     Background of Marttila

### A.     Marttila's Purported Trademarks and Products

#### (i)     SLED BITCH

22.     Marttila is an individual, who, in addition to other jobs, sells men's and women's t-shirts, hoodies, lightweight jackets, and related products, under the name trade name SLED BITCH. (Deposition Transcript, dated Nov. 9, 2011, of Elizabeth Marttila ("Marttila Tr."), pp. 12:2-25—14:1-10, 17:1-25-18:1-20; 29:5-20, attached to the Fitzgerald Dec. as Exhibit F).

23.     Marttila began selling these products in 2006, utilizing the trademarks SLED BITCH and/or SLED BITCH FOR THE GIRL WHO LIKES TO RIDE. (Counterclaim at ¶¶ 64-66, attached to the Fitzgerald Dec. as Exhibit G; Marttila Tr. pp. 21:17-25—22:1-10 (Fitzgerald Dec. Ex. F). Examples of Marttila's products containing the SLED BITCH mark are attached to the Fitzgerald Dec. as Exhibit H, and include the following:







24.     Marttila's SLED BITCH FOR THE GIRL WHO LIKES TO RIDE mark is registered in the PTO on the Principal Register in International Class 25. (Trademark registration, attached to Fitzgerald Dec. as Exhibit I).

(ii)     **Marttila's Subsequent Introduction of Clothing Bearing The SLED DIVA FOR THE GIRL WHO LIKES TO RIDE Design**

25.     Marttila claims that, beginning in or about July 2009, she began selling women's and girl's t-shirts and toddler dresses, which contained a screen printed design of a young girl on

a snowmobile, with the words SLED DIVA FOR THE GIRL WHO LIKES TO RIDE, on the

front of the products, as follows:



(Marttila Tr. pp. 45:12-18; 79:5-25—80:1-25 (Fitzgerald Dec. Ex. F); *see also* Application for

Trademark Registration Filed With the Minnesota Secretary of State, attached to the Fitzgerald

Dec. as Exhibit J).[3]

      26.    Marttila does not (and never has) used the word DIVA by itself on any of her

products.  (Marttila Tr. pp. 78:15-17 (Fitzgerald Dec. Ex. F)).

      27.    Marttila does not typically use SLED DIVA by itself; she testified that she uses

SLED DIVA accompanied by FOR THE GIRL WHO LIKES TO RIDE:

> Q. Isn't it true … whenever you use the word "Sled Diva," it's
> accompanied by "for the girl who likes to ride?"
>
> A. Yes.

(Marttila Tr. pp. 45:13-18 (Fitzgerald Dec. Ex. F)).[4]

---

[3] On August 2, 2010, five (5) months after ESD filed its trademark applications for SLED DIVAS® and SLED DIVA®, and six (6) days after ESD's SLED DIVAS® and SLED DIVA® marks were published for opposition, Marttila filed an application with the Minnesota Secretary of State, seeking registration of SLED DIVA FOR THE GIRL WHO LIKES TO RIDE. (Fitzgerald Dec. Ex. J).

  (iii) **Marttila's August 2, 2010 Application For Registration With The Minnesota Secretary Of State**

  28. On or about August 2, 2010, Marttila filed an "application for trademark, service mark, certification mark or collective mark" with the Minnesota Secretary of State. (Fitzgerald Dec. Ex. J).

  29. In her application, Marttila represented to the Secretary of State that she was seeking registration of "Sled Diva 'for the girl who likes to ride ...'". (*Id.*)

  30. Marttila further represented that she used the mark "***all on the front of our T shirts, hoodies & jackets***." (*Id.* (emphasis added)).

  (iv) **Marttila Has No "SLED DIVA" Brand**

  31. Marttila is a reseller of other company's products, except that she places her artwork on the products. Specifically, Marttila purchases "blank" apparel items from third parties and has another third party company, Hand Done T-Shirts, screen print her Sled Bitch or Sled Diva artwork or embroidery on the fronts of the items. Marttila then re-sells the products with her artwork to her customers. (Marttila Tr. pp. 35:8—41:2 (Fitzgerald Dec. Ex. F)).

  32. Prior to and as of November 9, 2011, Marttila never utilized any hang tag or label, or any packaging materials containing the words SLED DIVA or SLED DIVA FOR THE GIRL WHO LIKES TO RIDE. (Marttila Tr. pp. 74:14-75:25 (Fitzgerald Dec. Ex. F)).

  33. Marttila's hang tags, labels and packaging materials contain the words SLED BITCH. (Marttila Tr. pp. 74:5-75:25 (Fitzgerald Dec. Ex. F)).

  34. In addition, Marttila represents to her customers or potential customers that the products she sells are "Made In Ely Minnesota." (Marttila Tr. pp. 61:8-16; 140:25-141:23

---

[4] Marttila claims she had, on occasion, used the words SLED DIVA embroidered on a fleece jacket. (Marttila Tr. pp. 46:4—12; 79:21—81:8). Additionally, it appears that more recently (as of October 2011), Marttila began using SLED DIVA without the accompanying FOR THE GIRL WHO LIKES TO RIDE more frequently. (Fitzgerald Dec. ¶13, *see also* Fitzgerald Dec. Ex. L )

(Fitzgerald Dec. Ex. F); *see also* Sled Bitch advertisement, attached to Fitzgerald Dec. as Exhibit K). Marttila makes this representation because she is interested in "[k]eeping business in my hometown of Ely, Minnesota." (Marttila Tr. pp. 61:8-13 (Fitzgerald Dec. Ex. F)).

35.     Marttila's products, however, are not made in Ely, Minnesota.  (Marttila Tr. pp. 62:6—11 (Fitzgerald Dec. Ex. F)).

36.     While Marttila testified that she does not know where her products are actually made, based on a sample purchase of Marttila's product, the products are not made in the USA. At least some are made in Costa Rica.  (Marttila Tr. pp. 41:9—19; 140:25—141:18 (Fitzgerald Dec. Ex. F)).

37.     Indeed, Marttila testified that, even though she represents that her products are made in Ely, Minnesota, she has no idea where the products actually are made :

> Q:  Do you know where those T-shirts are made—or any apparel item that you sell, do you know where they are made?
>
> A: I have no idea.
>
> Q: Did you ever ask anybody?
>
> A: I don't know what you mean.
>
> Q: … Do you know where the apparel—the shirts or hats or whatever you sell—do you know where they are actually made, manufactured?
>
> A: I might.
>
> Q: Okay. What do you mean by you "might."?
>
> A: I'm not sure what you are asking.
>
> Q: I'm asking if you know where the apparel is made, put together. Do you know if it's made in the USA?
>
> A: I have no idea.

PHIL1 1820006-1

(Marttila Tr. P. 41:3—19 (Fitzgerald Dec. Ex. F)).

38.     Only the screen printing of her artwork on the products is performed in Ely, Minnesota because that is where Hand Done T-Shirts is located.  (Marttila Tr. pp. 61:8—16; 141:4—10 (Fitzgerald Dec. Ex. F)).

39.     With the exception of <u>one</u> wholesale order placed in 2010, Marttila sold and sells her products, at retail, directly to consumers.  (Marttila Tr. pp. 63:5-65:16 (Fitzgerald Dec. Ex. F)).

40.     Marttila sells her products through her web site, www.sledbitch.com, and at trade events in which Marttila and her family (and others on Marttila's behalf) personally staff, and home parties.  (Ex. G at ¶¶ 64-66; Ex. H at ¶¶ 64-66; Marttila Tr. pp. 25:6—29:4, 67:7—69:12 (Fitzgerald Dec. Ex. F)). An example of Martilla's products bearing the "SLED DIVA" logo are attached to Fitzgerald Dec. as Exhibit L and include the following:



41.     Marttila's products sell, at retail, for prices ranging from $8.00 to $55.00. (Marttila Tr. pp. 66:2-14 (Fitzgerald Dec. Ex. F)).

11

42.     Marttila does not advertise SLED DIVA separately from SLED BITCH.  (Marttila Tr. pp. 109:13-110:1 (Fitzgerald Dec. Ex. F)).

43.     Marttila does not, and never has, advertised any of her products in snow-sport  (or any other) national magazines.  (Marttila Tr. pp. 69:16—71:5 (Fitzgerald Dec. Ex. F)).

44.     The majority of Marttila's sales is from SLED BITCH products.  As she testified, "Sled Bitch has always been a huge hit.  And Sled Diva was added for my daughter and for people who don't want to wear the Sled Bitch apparel.."  (Marttila Tr. pp. 71:24—72:6 (Fitzgerald Dec. Ex. F)).  As she also testified, SLED BITCH is an "offensive" slogan.  (Marttila Tr. pp. 31:23—32:20 (Fitzgerald Dec. Ex. F)).

**B.      The PTO's Rejection of Marttila's Trademark Application For SLED DIVA FOR THE GIRL WHO LIKES TO RIDE  Due To Marttila's Failure To Use SLED DIVA As A Trademark.**

45.     On December 1, 2010, Marttila filed an application in the PTO seeking registration of SLED DIVA FOR THE GIRL WHO LIKES TO RIDE.  (Trademark Application for SLED DIVA FOR THE GIRL WHO LIKES TO RIDE Logo, dated December 1, 2010, attached as to the Fitzgerald Dec. as Exhibit M).

46.     On January 3, 2011, the PTO issued an Office Action refusing registration because:

> the applied-for mark, as used on the specimen of record, is merely a decorative or ornamental feature of the goods; it does not function as a trademark to identify and distinguish applicant's goods from those of others and to indicate the source of applicant's goods.

(Office Action, attached as to the Fitzgerald Dec. as Exhibit N).

PHIL1 1820006-1

47.     Marttila suspended the trademark application pending resolution of this matter. (SLED DIVA FOR THE GIRL WHO LIKES TO RIDE PTO Docket, attached to the Fitzgerald Dec. as Exhibit O).

### 3.     Marttila's SLEDDIVA.COM Domain Name

48.     Marttila is the owner of the domain name sleddiva.com; she registered this domain name on or about September 29, 2009,  ((Fitzgerald Dec. Ex. G at ¶ 68).

49.     However, Marttila does not, and never has, operated a web site at www.sleddiva.com.    Rather, visitors to www.sleddiva.com are directed to Marttila's www.sledbitch.com site. ((Fitzgerald Dec. Ex. G at ¶ 68; Marttila Tr. at pp.  61:1—7 (Fitzgerald Dec. Ex. F); *see also* screenshot of the webpage that appears when www.sleddiva.com is typed in, attached to Fitzgerald Dec. as Exhibit P).

50.     It is undisputed that Marttila has not obtained a trademark registration for SLEDDIVA.COM.

### III.   Marttila's Purported "SLED DIVA" Mark Is Weak

51.     Marttila testified that the word "sled" is "slang for snowmobile"—"just another word for snowmobile." (Marttila Tr. pp. 42:1-16 (Fitzgerald Dec. Ex. F)).

52.     Marttila also testified that the word "diva" is "generic" and simply means "spunky." (Marttila Tr. pp. 78:13-14; 110:15-24 (Fitzgerald Dec. Ex. F)).

53.     Moreover, there are multiple third party uses of "DIVA" and "SLED DIVA" for clothing and related items.

54.     For example, in January 2011, ESD obtained a Trademark Search Report prior to filing its intent to use application for DIVAS SNOWGEAR™.  (Gavinski Dec. ¶ 15).

55.     The Trademark Search Report covered the following goods and services: "snowmobile gear: clothing, accessories, head wear, jewelry, decals, outerwear, sleepwear relating to the sport of snowmobiling, water bottles, travel mugs, tumblers, keychains, posters, snowboards, skis, poles, snowmobiles, stickers, drinkwear, shock covers." (Gavinski Dec. Ex. 1).

56.     The report, which was completed on January 12, 2011, contained, among other things, over 80 references to the word DIVA and DIVAS, and fourteen (14) DIVA marks registered with the PTO in International Class 25 for clothing and related items, with first use in commerce dates that preceded July 2009.  (Gavinski Dec. Ex. 1).

57.     In addition, there were five references to the words DIVA or DIVAS with respect to goods specifically related to snow sports and which were in use before July 2009, as follows:

| Mark | Owner | Goods/Services | Status | First Use In Commerce |
|---|---|---|---|---|
| DIVA<br><br>P. 45 of Trademark Search Report | Rossignol Ski Company, Inc. | IC[5] 28: skis, ski poles, boot bags, … | Cancelled | Mar. 17, 1989 |
| DIVA SNOWBOARD COMPANY<br><br>P. 75 of Trademark Search Report | Ski Tote LLC | IC 28: snowboards and accessories for snowboards including snowboard boots, … gloves and mitts, | Abandoned | Jan 29, 2001 |
| OUTDOOR DIVAS<br><br>P. 145 of Trademark | Michael C. Callas | IC 25: sweatshirts, hats, jackets, … ski and snowboard boots, …, snow pants, …<br>IC 28: … skis, | Registered | Nov. 22, 2002 and July 3, 2008 respectively |

---

[5] "IC" means International Class.

14

| Search Report | | snowboards … | | |
|---|---|---|---|---|
| SPORTS DIVA<br><br>P. 169 of Trademark Search Report | Tammy L. Garbarino | IC 25: clothing for men, women and children, namely, t-shirts, … gloves, … ski jackets, ski pants, snowboard pants and snowboard jackets, … one piece clothing for infants and toddlers, … ski boots | Registered | Feb. 28, 2008 |
| FUNKY DIVA<br><br>P. 183 of Trademark Search Report | Funky Diva | IC 25: clothing, namely … sweat shirts, … tank tops, t-shirts, … ski wear, ski boots, … | Registered | Jan. 10, 1989 |

(Gavinski Dec. Ex. 1).

58.    In the snowmobile industry, there are numerous uses of the mark DIVA and SLED DIVA by third parties.   For example, as of March 15, 2007, Polaris, a popular snowmobile manufacturer, offered a sled (snowmobile) decal kit called "Pink Diva" for sale. (2008 Article, attached to the Gavinski Dec. as Exhibit 2; Gavinski Dec. ¶ 18(1)).

59.    In addition, on March 3, 2009, Polaris issued a press release regarding its new products.  Included in Polaris' product lineup was "snow apparel," in particular, "DIVA" jackets. (March 3, 2009 Polaris Press Release and 2008 Catalogue excerpts, attached to the Gavinski Dec. as Exhibit 3; Gavinski Dec. ¶ 18(2)).

60.    In fact, Marttila testified that she bought a Polaris jacket and that she was familiar with Polaris' "DIVA" jacket "possibly a few years ago, when they [Polaris] came out with it." (Marttila Tr. pp. 15:10-25—16:1-13, 110:15-25—111:1-17 (Fitzgerald Dec. Ex. F)).

61.    Marttila also testified that she saw the Polaris "DIVA" jacket "at a snowmobile show."  (Marttila Tr., 118:24-25—119:1-11; see also 120:10-16 (testifying that Marttila saw Polaris at shows before) (Fitzgerald Dec. Ex. F)).

PHIL1 1820006-I

62.     Currently, in addition to its "DIVA" jacket, Polaris offers several additional apparel and accessory items bearing the mark DIVA, including the Polaris "DIVA" Short Sleeve Shirt and "DIVA" Bibs.  (Exhibits 4, 5, and 6 to the Gavinski Dec.; Gavinski Dec. ¶ 18(3)).

63.     In addition to Polaris, other snowmobile accessory and snow sporting-related companies offered products and services bearing the SLED DIVA and DIVA marks, including:

- ArticFX "SLED DIVA" wrap kit; (Gavinski Dec. Ex. 7);

- "SLED DIVA" T-Shirt from www.syndicateclothing.com; (Gavinski Dec. Ex. 8);

- HPGraphix: "Pink Sno-Diva" sled kit (See HPGraphix.com printout, attached as Ex. http://www.hpwraps.com/Shop/product.php?productid=22&cat=0&page=1) (Gavinski Dec. Ex. 9);

- The Ski Diva: (http://www.theskidiva.com/) "TheSkiDiva Golfshirt," "TheSkiDiva Spaghetti Tank," "TheSkiDiva Women's Pink T-Shirt," "TheSkiDiva Jr. Hoodie," and "TheSkiDiva Hat" and other "TheSkiDiva" items for sale;  (Gavinski Dec. Ex. 10);

- Snowboard Diva: (http://snowboarddiva.com), (Gavinski Dec. Ex. 11);

- Outdoor Divas: www.outdoordivas.com (which was launched in 2005); (Gavinski Dec. Ex. 12);

- Rossignol's DIVA products (Gavinski Dec. Ex. 14).

(*See also* Gavinski Dec. ¶18(4)).

64.     Accordingly, in the snow sport arena, DIVA and SLED DIVA are common terms that are used in connection with women's and girl's apparel and snowmobile accessories.  As noted by  HPGraphix in its marketing materials: "With the sport growing rapidly with female riders we gotta have some cool stuff for the Divas!" (Gavinski Dec. Ex. 9; Gavinski Dec. ¶19).

16

IV.    **Marttila's Claims In This case**

65.    On or about October 17, 2010, after learning of Marttila's use of SLED DIVA FOR THE GIRL WHO LIKES TO RIDE on her t-shirts, ESD asked Marttila to stop such use because Marttila's use infringed upon ESD's rights.  (*See* e-mail dated October 17, 2010 from ESD to Marttila attached to Fitzgerald Dec. as Exhibit Q).   ESD even offered to pay for Marttila's graphic design (and other) fees that she would incur in removing SLED DIVA from her logo and coming up with new wording.  (*Id.*)

66.    At no prior time did Marttila complain to ESD of its use of SLED DIVAS® or any other mark.  (Gavinski Dec. ¶12).

67.    Marttila refused ESD's request and, instead, on November 3, 2010, through counsel, asserted that she was the senior user of SLED DIVA and demanded an excessive amount of money, that ESD cease and desist from its use of its SLED DIVAS® marks and that ESD transfer all of ESD's intellectual property and domain names to her.  Marttila threatened to bring legal action against ESD if ESD did not comply.  (*See* November 3, 2010 "Cease and Desist Letter" from Marttila attached to Fitzgerald Dec. as Exhibit R).

68.    On November 18, 2010, ESD commenced a civil action in this Court styled *Extreme Sports Divas, LLC, vs. Elizabeth J. Marttila individually and d/b/a Sled Bitch*, Case Number 3:10-cv-00725 (the "November 2010 Action").  (*See* Summons issued November 18, 2010 attached to Fitzgerald Dec. as Exhibit S).

69.    Thereafter, the parties attempted to settle the dispute.  However, the parties were unable to reach an agreement.  Rather than expending resources in litigating the matter with Marttila, ESD decided to attempt to phase out its use of SLED DIVAS® once its existing

inventory was depleted and introduce a new brand, DIVAS SNOWGEAR.™ (Gavinski Dec. ¶ 27).

70.     Accordingly, ESD voluntarily withdrew its complaint in the November 2010 Action, without prejudice, by filing a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a). (*See* ESD's Notice of Voluntary Dismissal attached to Fitzgerald Dec. as Exhibit T).

71.     On January 4, 2011, after ESD withdrew the November 2010 Action, Marttila served ESD with another letter, again demanding money, that ESD transfer its intellectual property and sleddivas.com domain name to her and that ESD cease and desist from its use of the SLED DIVA® and SLED DIVAS® marks; Marttila again threatened legal action if ESD did not comply with her demands by January 12, 2011. (*See* January 4, 2011 Letter attached to Fitzgerald Dec. as Exhibit U).

72.     Accordingly, on January 14, 2011, ESD initiated the instant action, seeking, among other things, a declaratory judgment that ESD did not infringe Marttila's marks. (See Complaint attached to Fitzgerald Dec. as Exhibit V).

73.     In response to the complaint filed in this action, Marttila asserted counterclaims against ESD for the following:

(1) Count I: Violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)), contending that ESD's use of SLED DIVA®, SLED DIVAS®, LIL SLED DIVAS and DIVAS SNOWGEAR™ and www.sleddivas.com violates Marttila's SLED DIVA "trademark;"

(2) Count II: Violation of §43(d) of the Lanham Act (15 U.S.C. §1125(d)) (the AntiCybersquatting Consumer Protection Act ("ACPA")), contending that ESD's

18

registration and use of its www.sleddivas.com website violates Marttila's rights in and to SLED DIVA and www.sleddiva.com;

(3) Count III: Declaratory Judgment, seeking declarations that: (i) her rights in the SLED DIVA mark are superior to ESD's rights and that she owns the "SLED DIVA" mark; (ii) that ESD has no rights in and to SLED DIVAS®, SLED DIVA®, LIL SLED DIVAS™ and DIVAS SNOWGEAR™; (iii) that ESD's registration for www.sleddivas.com is in bad faith; (iv) that ESD's use of SLED DIVAS®, SLED DIVA®, LIL SLED DIVAS and DIVAS SNOWGEAR™ infringe Marttila's rights in violation of §43(a) of the Lanham Act;

(4) Count IV: Cancellation of Registration No. 3,887,999 (SLED DIVAS®);

(5) Count V: Liability for False or Fraudulent Statements in the Procurement of Registration No. 3,887,999 (SLED DIVAS®);

(6) Count VI: Common Law Unfair Competition; and

(7) Count VII: Promissory Estoppel, contending that Marttila relied to her detriment on ESD's alleged representation that "it intended to dispose of its inventory and discontinue all future sales of products bearing the marks 'SLED DIVA' and 'SLED DIVAS.'"

(Fitzgerald Dec. Ex. G, ¶¶90—130).

74.    Discovery has been proceeding in this case, with the parties exchanging voluminous documents and conducting two depositions as of this date.

75.    Discovery has revealed, that, among other things, since ESD began selling products bearing the SLED DIVAS® mark, *Marttila's sales have more than doubled*. (Marttila Tr. pp. 186:11-14 (Fitzgerald Dec. Ex. F)).

76.     And, although Marttila seeks to prevent ESD from using DIVAS SNOWGEAR™, and seeks damages relating to ESD's use of DIVAS SNOWGEAR™, Marttila testified that she was not familiar with ESD's use of DIVAS SNOWGEAR™.  (Marttila Tr. pp. 185:22—187:11 (Fitzgerald Dec. Ex. F)).

77.     Furthermore, ESD also has obtained, and served Marttila with, the expert report of Michael Rappeport, Ph.D.  A copy of Dr. Rappeport's Expert Report is attached to the Fitzgerald Dec, as Exhibit W.

78.     Dr. Rappaport conducted a survey and opined that there is no likelihood of confusion between ESD's DIVAS SNOWGEAR™ mark and Marttila's purported SLED DIVA mark. (Fitagerald Dec. Ex. W).

79.     Martilla has produced no evidence showing any actual confusion between DIVAS SNOWGEAR™ and any of her purported marks.

80.     Marttila has produced no evidence showing any bad faith intent on behalf of ESD. To the contrary, at the time ESD adopted its SLED DIVAS mark and related marks, ESD was unaware of Marttila's claims of ownership in or to SLED DIVA.  (Gavinski Dec. ¶13).

81.     ESD, accordingly, now seeks summary judgment on all counts of Marttila's counterclaim because, as set forth in detail in ESD's Brief in Support of its Motion for Summary Judgment, (i) Marttila has no protectable rights in or to SLED DIVA, as a matter of law, and hence, all counterclaims should be dismissed on that basis; (ii) assuming *arguendo* that Marttila has any rights in or to SLED DIVA, ESD's DIVAS SNOWGEAR™ mark is not similar, let alone *confusingly* similar, to Marttila's SLED DIVA mark; as such, all of Marttila's claims that are based on ESD's use of DIVAS SNOWGEAR™ should be dismissed; and (iii) Marttila has

20

produce no evidence in support of her contention that ESD acted in bad faith—a necessary prerequisite to her ACPA claim.

## V.      JURISDICTION AND VENUE

82.      This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claim arise under the laws of the United States, most notably the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.   (Complaint, ¶¶3, 4 (Fitzgerald Dec. Ex. V); Answer and Counterclaim, ¶¶3, 4 (Fitzgerald Dec. Ex. G))

83.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district, and because the parties are subject to personal jurisdiction in this judicial district and regularly transact business in this district.   (Complaint, ¶¶3, 4 (Fitzgerald Dec. Ex. V); Answer and Counterclaim, ¶¶3, 4 (Fitzgerald Dec. Ex. G))


Dated this 1st day of December 2011          KLEHR HARRISON HARVEY
                                             BRANZBURG LLP


                                             By:    /s/ Brian R. Fitzgerald, Esq.
                                                    Lisa A. Fitzgerald, Esq.
                                                    Brian R. Fitzgerald, Esq.
                                                    1835 Market Street
                                                    Philadelphia, PA 19103
                                                    LLori@klehr.com
                                                    bfitzgerald@klehr.com
                                                    (215) 569-2700 (phone)
                                                    (215) 568-6603 (fax)

                                                    *Attorneys For Plaintiff*
                                                    *Extreme Sports Divas, LLC*

## IN THE U.S. DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

EXTREME SPORTS DIVAS, LLC

                  Plaintiff,       No. 3:11-CV-00032 (WMC/SLC)

vs.

ELIZABETH J. MARTTILA individually  **COUNTERCLAIM DEFENDANT'S**
and d/b/a SLED BITCH                **MEMORANDUM OF LAW IN**
                                     **SUPPORT OF ITS MOTION FOR**
                                     **SUMMARY JUDGMENT**
                  Defendant.

Plaintiff and counterclaim defendant Extreme Sports Divas, LLC ("ESD"), by and through its counsel Klehr Harrison Harvey Branzburg LLP, submits the following Memorandum of Law in support of its Motion for Summary Judgment on Defendant Elizabeth J. Marttila individually and d/b/a Sled Bitch's ("Marttila") Counterclaim.

### INTRODUCTION

This action involves claims of trademark infringement. Plaintiff/counterclaim defendant ESD, based out of Oregon, Wisconsin, is a designer and seller of women's snowmobile gear and accessories. ESD, which was formed in 2010, began selling its products in September 2010 under its federally registered trademark SLED DIVAS®. In or about October 2010, ESD learned that Marttila, an individual based out of Ely, Minnesota, who does business under the trade name SLED BITCH, was selling T-shirts and related items bearing not only her SLED BITCH logo, but also a SLED DIVA FOR THE GIRL WHO LIKES TO RIDE logo.

Upon learning of Marttila's conduct, ESD asked Marttila to stop using SLED DIVA, as Marttila was violating ESD's rights. ESD even offered to pay for Marttila's graphic design fees

associated with changing her logo. In response, Marttila claimed she was the senior user of SLED DIVA, accused ESD of infringing her rights and made excessive monetary demands upon ESD. As a result, ESD filed a lawsuit against Marttila in this Court in November 2010 for trademark infringement.

Although ESD continues to believe that it is the owner of the SLED DIVAS® trademark, ESD (a start up company still in its infancy and which has yet to turn a profit) made a business decision to spend its resources on changing its trademark rather than litigating with Marttila. Accordingly, ESD dismissed the November 2010 Action without prejudice, and began taking steps to rebrand itself as DIVAS SNOWGEAR™. Apparently realizing that she missed an opportunity to obtain a windfall from ESD, Marttila continued to threaten ESD even after it dismissed the November 2010 Action, and made unreasonable demands for money. These continued threats culminated in ESD refilling its original action.

In response, and despite the fact that Marttila's sales actually more than doubled after ESD began using SLED DIVAS®, Marttila filed a seven count counterclaim against ESD. ESD now moves for summary judgment as to all of Marttila's counterclaims. The essence of Marttila's counterclaims is that she is the senior user of her purported common law "trademark," SLED DIVA, and that ESD infringed Marttila's rights by using SLED DIVAS®, and variations thereof, and by using DIVAS SNOWGEAR™. Marttila also claims that ESD violated the AntiCybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. §1125(d)) by registering and using a domain name, www.sleddivas.com in connection with selling its SLED DIVAS® products. Marttila seeks declaratory relief as well as monetary, injunctive and punitive relief (in addition to attorney fees).

All of Marttila's counterclaims are without merit because she has no trademark rights in or to SLED DIVA. Marttila never used this mark as a trademark or source identifier, which is necessary to confer trademark rights.

In addition, even if Marttila has any such trademark rights, which she does not, ESD's DIVAS SNOWGEAR™ mark is not confusingly similar to her purported SLED DIVA mark. Thus, all of her claims relating to ESD's use of DIVAS SNOWGEAR™ should be dismissed.

Nor is there any evidence of any bad faith intent on the part of ESD, which is a necessary element for Marttila's ACPA claim. To the contrary, all the evidence shows that ESD acted in good faith. Accordingly, there are no material facts that create any genuine issues for trial. Therefore, ESD is entitled to summary judgment on all of Marttila's counterclaims.

## STATEMENT OF FACTS

Pursuant to the Procedures to Be Followed on Motions for Summary Judgment for The Honorable William Martin Conley, ESD has submitted a separate statement of the proposed, material facts supporting this motion. (*See* Counterclaim Defendant's Proposed Findings of Fact.) ESD directs the Court to this separate statement for the facts supporting this motion. As necessary to support its arguments below, ESD will reference these material, undisputed facts.

## LEGAL ANALYSIS

I.   **SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court shall grant summary judgment when "the record 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (quoting Fed. R. Civ. P. 56). While the court must construe all facts in the light most favorable to the nonmoving party, the nonmoving party "may not rest on

3

the pleadings but must adduce evidence setting forth specific facts showing that there is a genuine issue for trial," *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). This requires "more than just speculation or conclusory statements." *Griffith v. Fenrick*, 486 F. Supp. 2d 848, 851 (W.D. Wis. 2007) (citing *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003)). Summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Packman*, 267 F.3d at 637 (citation omitted).

Furthermore, when the nonmoving party "has the burden of proving an issue at trial, she has the burden of demonstrating the existence of a genuine issue of material fact so as to preclude summary judgment." *Jahn v. 1-800-FLOWERS.COM, Inc.*, 2002 WL 32362244 *8 (W.D. Wis. Oct. 21, 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In an action for trademark infringement, if the claimed mark is not registered with the United States Patent and Trademark Office ("PTO"), claimant bears the burden to establish that she is entitled to protection under § 43(a) of the Lanham Act. *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998).

Marttila is the claimant and her purported mark, SLED DIVA, is not registered with the PTO. For the reasons stated below, Marttila cannot establish that she is entitled to protection under the Lanham Act.

## II.     MARTTILA'S COUNTERCLAIMS SHOULD BE DISMISSED

### A.     Marttila's Claims Should be Dismissed Because She Cannot Prove That She Has Any Protectable Interest In The SLED DIVA Mark.

Each of Marttila's seven counterclaims are premised on her purported "senior" trademark rights in and to SLED DIVA. However, as a threshold matter, to prove trademark infringement under the Lanham Act, 15 U.S.C. §1125(a), or any other claim that depends on her purported trademark rights, the claimant—Marttila— must prove that she has a protectable ownership

4

interest in the mark at issue. *Platinum Home Mortgage Corp.*, 149 F.3d at 726; *GB Elec., Inc. v. Thomas & Betts Corp.*, 1995 WL 795660, at *5 (E.D. Wisc. 1995 July 28, 1995) (citing *Forum Corp. of N. Am. v. Forum Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990)). Here, Marttila cannot sustain her burden because she has no protectable interest in or to SLED DIVA or SLED DIVA FOR THE GIRL WHO LIKES TO RIDE. As such, all of her counterclaims should be dismissed.

"Not every single word [or] phrase . . . that appears on a label or in an advertisement qualifies as a protectable mark. . . . If a purported mark fails to identify its source, it is not protectable—under state or federal law." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir. 2001) (holding "a plaintiff must show that it has actually used the designation at issue as a trademark; thus the designation or phrase must be used to perform the trademark function of identifying the source of the merchandise to the customers.") (citations omitted); *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998) (stating "it is <u>not</u> the case that all inherently distinctive symbols or words on a product function as a trademark" . . . to be protected as a valid trademark, a designation must create 'a separate and distinct commercial impression, which . . . performs the trademark function of identifying the source of the merchandise to the customers.") (citing *In re Chem. Dynamics, Inc.*, 839 F.2d 1569, 1571 (Fed. Cir. 1988)). Thus, a trademark, by definition, must identify the source of the product, and, to allege trademark infringement, a complainant must "show that it has actually used the designation at issue *as a trademark*[.]" *Rock & Roll Hall of Fame*, 134 F.3d at 753 (emphasis in original).

Marttila produced no evidence that shows that she used the designation as a trademark or as an identifier of source. To the contrary, the evidence establishes that Marttila's only use of

SLED DIVA and/or SLED DIVA FOR THE GIRL WHO LIKES TO RIDE was ornamental—

*i.e.*, her only use was on the fronts of her apparel items, as follows:



(Counterclaim Defendant's Proposed Findings Of Fact, ¶¶25, 30—33, 45—46)  Indeed, Marttila

testified that she has never used any SLED DIVA hang tags, labels or packaging materials to

signify the source of the products.  (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶

33—33)  Marttila's ornamental use does <u>not</u> constitute trademark use.  *See Go Pro Ltd. v. River

Graphics, Inc., 2006 WL 898147, *3-4* (D. Colo. April 5, 2006) (granting summary judgment in

favor of alleged infringer on trademark infringement claim and finding that plaintiff's use of

"Here, Fishy Fishy", which was embroidered on T-shirts and hats, constituted ornamental use

and not trademark use); *In re Pro-Line Corp.*, 28 U.S.P.Q. 2d 1141, 1142-44 (TTAB 1993)[1]

(finding that use of slogan on shirts constituted ornamental use, thereby precluding registrability

of mark).

---

[1] A copy of *In re Pro-Line Corp.* is attached to Fitzgerald Dec. as Exhibit X.

As further evidence of Marttila's ornamental use, the PTO refused Marttila's registration for SLED DIVA on the basis that her use was "ornamental."  The PTO stated that Marttila's purported SLED DIVA mark:

> is merely ornamental because it is used as a design element in the front center of [her] t-shirts. . . . In this case, the mark appears prominently on the front center of the clothing goods.  As such consumers will perceive it as a design element rather than an indicator of use.

(Counterclaim Defendant's Proposed Findings Of Fact, ¶46)[2]  Although the PTO's determination is not binding on this Court, it is persuasive evidence that Marttila's use of the proposed mark was ornamental.

Moreover, Marttila's registration of the domain name sleddiva.com does not constitute trademark use.  *See e.g., 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 408-09 (2d Cir. 2005) (ruling that use of www.1800contacts.com was not the same as using the trademark 1-800CONTACTS ® because the web address "transform[ed] 1-800's trademark-which is entitled to protection under the Lanham Act-into a word combination that functions more or less like a public key to 1-800's website"); *Specht v. Google, Inc.*, 758 F. Supp.2d 570, 591 (N.D. Ill. 2010) (finding that use of domain name or email address to identify internet host computer does not constitute bona fide use in commerce); *GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 728 (N.D. Tex. 2010) (holding that a domain name that functions "merely as a web address that internally redirects to the domain name's homepage" is not a use protected by the Lanham Act); *Acad. of Motion Picture Arts & Scis. v. Network Solutions Inc.*, 989 F. Supp. 1276, 1279 (C.D. Cal. 1997) (finding "[t]he mere registration of a domain name does not constitute a commercial use" sufficient to establish trademark protection).

---

[2] There is no evidence that Marttila's use of SLED DIVA or SLED DIVA FOR THE GIRL WHO LIKES TO RIDE has acquired secondary meaning.

7

Marttila does not have any actual Internet site at www.sleddiva.com. (Counterclaim Defendant's Proposed Findings Of Fact, ¶49) Rather, customers typing www.sleddiva.com are automatically directed to Marttila's www.sledbitch.com website. (Counterclaim Defendant's Proposed Findings Of Fact, ¶49) Thus, she cannot be said to actually have used the domain name.

In any event, there is simply no evidence that Marttila used SLED DIVA or SLED DIVA FOR THE GIRL WHO LIKES TO RIDE as an indicator of source, or, in other words, as a trademark, prior to the time ESD began using SLED DIVAS® in September 2010. Accordingly, Marttila has no protectable interest in or to SLED DIVA or any variation thereof. As such, all of Marttila's claims as set forth in Counts I through VII of Marttila's counterclaim, which all are premised on her purported rights in SLED DIVA, should be dismissed.

**B.     Even If Marttila Has A Protectable Interest In SLED DIVA, Her Claim For Trademark Infringement As To ESD's Use Of DIVAS SNOWGEAR™ Should Be Dismissed.**

Even if Marttila has a protectable interest in SLED DIVA or SLED DIVA FOR THE GIRL WHO LIKES TO RIDE, which she does not, Marttila must prove that "the similarity between the plaintiff's and defendant's marks will probably confuse the relevant group of buyers about the source of the plaintiff's and defendant's goods." *GB Elec.*, 1995 WL 795660, at *5 (citing *Forum Corp. of N. Am.*, 903 F.2d at 439). In determining likelihood of confusion, courts in this circuit consider seven factors in their analysis:

> (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the [claimant's] mark; (6) actual confusion; and (7) intent of the defendant to "palm off" 'his product as that of another.

*Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001); *see also Sullivan v. CBS Corp.*, 385 F.3d 772, 776 (7th Cir. 2004); *Barbeque Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d

8

1041, 1043-44 (7th Cir. 2000).   Moreover, a finding of non-similarity of the marks should be dispositive and dismissal of a trademark infringement claim should follow. *See Top Tobacco, L.P. v. N. Atl. Operating Co.*, 509 F.3d 380, 382-83 (7th Cir. 2007); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir. 1979).

### 1. DIVAS SNOWGEAR™ Is Not Similar To SLED DIVA FOR THE GIRL WHO LIKES TO RIDE

In determining similarity of the marks, "[t]he marks must be so similar that it is likely or probable, not just possible, that consumers, when presented with the marks singly, rather than side-by-side, would confuse [the alleged infringing mark—ESD's mark] with the source of [complainant's—Marttila's] mark." *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 354 (7th Cir. 1983).   In analyzing the similarity of the marks, the Court should look for similarity of "'sound, sight and meaning." *Id.* (citation omitted).

On their face, ESD's DIVAS SNOWGEAR™ mark and Marttila's SLED DIVA logo are not similar:



(Counterclaim Defendant's Proposed Findings Of Fact, ¶¶16, 40)

9

As evident from the depictions of the marks, DIVAS SNOWGEAR™ is two words, depicted with a stylized word DIVAS (with an upper case "D") on the top and a stylized version of SNOWGEAR on a separate line underneath the word DIVAS. Marttila's SLED DIVA FOR THE GIRL WHO LIKES TO RIDE is nine words, with SLED DIVA in lower case letters imposed on an illustration of a small girl on a snowmobile on one line, and FOR THE GIRL WHO LIKES TO RIDE below the snowmobile and lower cased lettering for SLED DIVA.[3] (Counterclaim Defendant's Proposed Findings Of Fact, ¶25) DIVAS SNOWGEAR™ has four syllables; whereas SLED DIVA FOR THE GIRL WHO LIKES TO RIDE has ten syllables. SLED DIVA itself has only three syllables.

Furthermore, the predominant feature of Marttila's SLED DIVA mark is "SLED." While she uses the same font size and type for both SLED and DIVA, Marttila's family of marks contains the word "SLED" not DIVA—as evidenced by her primary mark, SLED BITCH. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶22—25, 42, 44)

The only substantive similarity between the two marks is the use of the word "DIVA." However, this similarity does not render the marks "so similar that it is likely or probable … that consumers, when presented the marks singly . . . would confuse" the source of the marks. *Henri's Food Prods.*, 717 F.2d at 355. Indeed, "[t]he use of identical, even dominant, words in common does not automatically mean that the two marks are similar." *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987); *see also Armstrong Cork Co.*, 597 F.2d at 502-04 (finding that plaintiff's and defendant's uses of the word WORLD in connection with carpets was not similar); *Wash. Nat'l Ins. Co. v. Blue Cross & Blue Shield United of Wisconsin*, 727 F. Supp. 472, 474-76 (N.D. Ill. 1990) (finding "no significant degree of similarity" between

---

[3] Marttila confirmed that she typically uses SLED DIVA accompanied by FOR THE GIRL WHO LIKES TO RIDE, rather than SLED DIVA alone. Thus, the comparison should be between DIVAS SNOWGEAR™ and SLED DIVA FOR THE GIRL WHO LIKES TO RIDE.

10

plaintiff's and defendant's marks, which both contained the word "advantage" in connection with health care services). In analyzing whether the marks are similar, the Court "must look to the overall impression created by the marks and not merely comparing individual features." *Gen. Mills*, 824 F.2d at 627; *see also Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp.2d 1214, 1226 (C.D. Cal. 2004) (finding that, under the anti-dissection rule, courts may not dissect marks in examining and comparing their component parts).

As stated above, the marks, in their entirety, are not similar. However, focusing solely on the parties' uses of DIVA and DIVAS, the differences outweigh any similarities. ESD uses the word "DIVAS" by itself, followed by SNOWGEAR. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶12, 16) Marttila *never* uses the word "DIVA" by itself; she *always* uses the word SLED in front of DIVA. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶26--27) And, Marttila almost always uses the phrase "for the girl who likes to ride" with SLED DIVA. (Counterclaim Defendant's Proposed Findings Of Fact, ¶27) These variations alone are sufficient to defeat an infringement claim. *See, e.g., Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F. Supp. 547, 549 (S.D.N.Y. 1972), *aff'd*, 480 F.2d 801 (2d Cir. 1973) (finding that small differences between "BREATH SAVERS" and "BREATH PLEASERS" to be sufficient to defeat claim for infringement).

Even if the differences are not sufficient, as set forth below, Marttila has no exclusive right to use the word "DIVA" and cannot prevent others from using it.

### 2.     Marttila's Mark is Weak And Not Entitled To Protection.

Marttila, herself, conceded that the word "SLED" is just another word for snowmobile and that the word "DIVA" is "generic" and simply means "spunky."[4] (Counterclaim

---

[4] It is axiomatic that generic marks are not entitled to trademark protection. *E.g., Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1161-62 (7th Cir. 1996). In addition, significant use of a term by competitors in the industry

Defendant's Proposed Findings Of Fact, ¶¶51—52)  The word "sled" does not appear in ESD's use of DIVAS SNOWGEAR™.  Thus, Marttila's only purported basis for seeking to prevent ESD from, and suing ESD for, using DIVAS SNOWGEAR™ is its use of DIVAS.  However, Marttila's claim in meritless as she has no rights in or to DIVAS.

It is well established that third party usage of similar marks on similar goods renders complainant's mark weak and open to use by competitors.  *Am. Soc'y of Plumbing Eng'rs v. TMB Publ'g, Inc.*, 109 Fed. Appx. 781, 789 (7th Cir. 2004) (holding "[t]he more use and promotion of similar marks by third parties, the weaker the mark and less protection afforded.") (citation omitted); *Armstrong Cork Co.*, 597 F.2d at 505 (finding "the greater the number of identical or more or less similar trade-marks already in use . . . the less is the likelihood of confusion.") (citing Restatement of Torts § 729, Comment (g), at 596 (1938) and finding that 85 companies use of the word WORLD in carpet sales and manufacturing "militates against the finding of likelihood of confusion"); *see also Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917 (C.C.P.A. 1976) (finding that "third party registrations [of similar marks] provide at least some evidence that [registrants] considered the [marks] to be suggestive of" the specific products and finding no likelihood of confusion between suffix TRONICS and TRONIX); *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 270 (4th Cir. 2006) (finding that "evidence of extensive third-party use also demonstrates that CareFirst's mark lacks commercial strength" and that there was no likelihood of confusion between CAREFIRST and FIRST CARE for physician's group medical offices); *Wash. Nat'l Ins. Co.*, 727 F. Supp. 472 (finding that the

---

has traditionally been recognized, along with dictionary evidence, as indicating genericness." *Id.* at 1159. According to Merriam Webster's Dictionary, the word "diva" means "prima donna" or "a usually glamorous and successful performer or personality <a fashion *diva*>." (*See* www.merriam-webster.com/dictionary/diva)  Thus, since the mark DIVA appears to be generic, Marttila has no rights in or to such word.

12

suggestive term ADVANTAGE, which was used in connection with health care programs, was weak because of extensive use by competitors).  As stated by one federal court in Wisconsin:

> Although [plaintiff's] mark may be arbitrary, its banality makes it weak.  At least two other companies, besides [defendant], use the word "cyclone" to market their goods . . . More generally, there appear to be hundreds of companies that use the word "cyclone." . . . The more contractors and electricians [purchasers of both parties' products] see the word "cyclone" on tools made by different companies, the less they will attribute a cyclone mark to any one company.

*GB Electrical*, 1995 WL at *7 (finding plaintiff's trademark CYCLONE weak due to numerous third party uses of the same mark and refusing to enjoin defendant's use) (citations omitted); *see also Abercrombie*, 331 F. Supp.2d at 1217-25.

    *Abercrombie* is analogous to the instant case.  In *Abercrombie*, plaintiff, Moose Creek, was the owner of senior trademarks containing the word "moose" and involving depictions of moose, which were used in connection with clothing.  *Abercrombie*, 331 F. Supp.2d at 1217-19.  Plaintiff sought to enjoin defendant Abercrombie & Fitch from using similar "moose" related marks on clothing.  *Id.* at 1219-21.  In denying plaintiff's motion for a preliminary injunction, the court found that there was no likelihood of confusion between the marks because, among other things, plaintiffs marks were weak due to extensive third party use of similar marks on similar goods.  *Id.* at 1224.  The *Abercrombie* Court stated:

> [E]ven "an arbitrary mark may be classified as weak where there has been extensive third party uses of similar marks on similar goods." . . . This is known as the "crowded field" doctrine. . . . Abercrombie has proffered substantial evidence, in the form of internet advertisements, that demonstrates that many retailers are selling clothing bearing either the word "moose" or a picture of a moose very similar in appearance to the moose depicted in Plaintiffs' marks. . . . Regardless of whether the owners of these clothing companies affix a moose to their clothing line as a trademark or as an ornamental design, the point is that members of the public . . . have likely seen a picture of a realistic-looking

13

moose on many different brands of clothing, and thus are not likely to associate an Abercrombie product containing a picture of a moose exclusively with Plaintiffs' Moose Creek clothing brand.

*Id.* at 1225.

Marttila's "DIVA" designation is like the moose marks in *Abercrombie*. The word "DIVA" is commonly used in the clothing and accessories markets. This is evidenced from the samples of third party trademark registrations and Internet advertisements containing "DIVA", set forth in ESD's Proposed Findings of Fact and the Declaration of Wendy Gavinski, including Outdoor Divas, Funky Divas, Rossignol's DIVA products and Sports Divas, to name but a few. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶53—64). The majority of these third party uses pre-date Marttila's purported first use date of July 2009. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶57, 58, 59, 60, 61, 63) Furthermore, many of these third party uses are in the specific field of snow-sports and snowmobile industries, such as Polaris' and HPGraphic's DIVA products and ArticFX's SLED DIVA products. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶57-63) (Counterclaim Defendant's Proposed Findings Of Fact, ¶63) Accordingly, because third party usage of "DIVA" is so prevalent, purchasers are not likely to associate a product bearing ESD's DIVAS SNOWGEAR™ mark with Marttila's mark (or vice versa). More to the point, because there are so many third party uses of "DIVA," Marttila's mark is weak and Marttila cannot prevent others from using the mark.

### 3. The Products, Areas and Manners of Concurrent Use Are Not Similar.

Marttila sells T-shirts and related items, which range from $8.00 to $55.00, directly to end user consumers.[5] (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶22, 25, 41) Marttila sells her products through her www.sledbitch.com website, at home parties and at

---

[5] Marttila had <u>one</u> isolated "wholesale" sale to a third party retailer.

14

tradeshows. (Counterclaim Defendant's Proposed Findings Of Fact, ¶40)   Marttila also represents to her customers that her clothing is "Made in Ely, Minnesota" (even though it is not) because she wants to keep her "business in [her] hometown of Ely, Minnesota." (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶34-38)  In addition, Marttila does not advertise any of her products in national magazines. (Counterclaim Defendant's Proposed Findings Of Fact, ¶43)

Conversely, ESD designs and sells snowmobile protective gear and accessories, such as protective vests, bibs, weatherproof jackets and snowmobile wrap kits, primarily at wholesale, to third party retailers. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶2, 6, 34-38) ESD's products range from $20.00 to $349.00. (Counterclaim Defendant's Proposed Findings Of Fact, ¶17)

ESD advertises, and/or its products appear on or in various Internet sites, including Facebook, and international snowmobile-related magazines, such as Snowriders, SnoWest, OnSnow Magazine, Snowmobile Magazine, SnowGoer, American Snowmobiler, and SledHeads. (Counterclaim Defendant's Proposed Findings Of Fact, ¶18)  ESD does not make any "made in Ely, Minnesota" claims.  Nor does ESD focus its sales efforts on Ely, Minnesota or any one geographical territory.

Accordingly, while there is a some overlap in the parties' products, areas and manners of concurrent use, it is apparent that the parties primarily market and sell different types of goods, to different types of customers.  Thus, the differences in the parties' products, and area and manner of concurrent use are dissimilar and weigh against a finding of likelihood of confusion.

**4.      Consumers Of the Parties' Products Exercise A High Degree of Care.**

In considering this factor, courts consider "the type of product, its cost, and conditions of purchase." *Roederer v. Garcia Carrion, S.A.*, 732 F. Supp.2d 836, 877 (D. Minn. 2010) (citing

15

*SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). Confusion is less likely when "consumers are sophisticated, deliberative buyers." *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997). And, consumers are more likely to exercise care when purchasing more expensive products.

Marttila's SLED DIVA and SLED BITCH products are only available through her www.sledbitch.com website and at home parties and tradeshows where she personally (or others on her behalf) sells her merchandise. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶40--44) Marttila sells directly to consumers and with the exception of one isolated "wholesale" sale, she does not sell her products to third-party retailers. (Counterclaim Defendant's Proposed Findings Of Fact, ¶39) Conversely, ESD's products are primarily sold through third party retailers, such as powersports dealers. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶6—7) ESD's limited consumer direct sales are through its website and at trade shows. (Counterclaim Defendant's Proposed Findings Of Fact, ¶7) Notably, ESD's products and Marttila's products are never co-mingled; Marttila's products are always offered on **her** website and in **her** booth at a tradeshow; similarly, ESD's products are always offered on **its** website and at **its** booth at a trade show. Consequently, there is no opportunity for consumers to be confused as to the sources of the products because the products are sold separately through distinct sources.

Furthermore, Marttila's products sell for $8.00 to $55.00; ESD's products sell for $20.00 to $349.00. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶17, 41) Purchasers at these price points are not "casual" or "impulse" buyers. *Blue Bell, Inc. v. Jaymar-Ruby, Inc.*, 497 F.2d 433, 435-36 n.5 (2d Cir. 1974) (finding expensive price range--$4.50 to $26.00 for plaintiff's goods and $20.00 to $35.00 for defendant's goods—and fairly detailed purchasing

process reduce likelihood consumers will be misled; purchases, which involved personal examination and fitting of sportswear, were not "casual"). Purchasers of Marttila's and ESD's products are more likely to personally examine the apparel products for aesthetic appeal, and try them on for fit and comfort prior to purchase. Accordingly, the buyers of the parties' products are likely to exercise a higher degree of care. As such, this factor weighs against a finding of likelihood of confusion.

### 5.  There Is No Evidence Of Any Bad Faith Of ESD.

In assessing this factor, courts consider whether the alleged infringer intended to palm his goods off as those of the another (here, whether ESD intended to palm its goods off as those of Marttila). *Packman*, 267 F.3d at 643; *Roederer*, 732 F. Supp.2d at 871. There is no evidence that ESD in any way attempted to palm its goods off as those of Marttila's. Nor is there any evidence that ESD acted in bad faith or with an improper motive.

Indeed, the evidence shows that ESD, at all times, acted in good faith. ESD engaged counsel to file the SLED DIVA® and SLED DIVAS® marks, Marttila's mark was not raised in the pre-filing procedures, ESD submitted the marks for registration, and the PTO examiner did not indentify ESD's mark as confusingly similar to Marttila's. *See Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1317 (N.D. Ga. 2008) (finding no evidence of bad faith where the alleged infringer acted in a similar manner). In addition, before adopting the DIVAS SNOWGEAR mark, ESD obtained a Trademark Search Report, which contained multiple trademark registrations and pending registrations containing the word DIVA and DIVAS. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶54—57) ESD then filed an intent-to-use trademark application for DIVAS SNOWGEAR™, publicizing to the world ESD's intention to use the DIVAS SNOWGEAR™ mark. (Counterclaim Defendant's Proposed Findings Of

17

Fact, ¶¶12—14)  Marttila did not object to ESD's proposed use of DIVAS SNOWGEAR™. (Counterclaim Defendant's Proposed Findings Of Fact, ¶14)  Thus, ESD did not act in bad faith in using DIVAS SNOWGEAR™.  *See Trilink Saw Chain, supra.*[6]

Furthermore, there is no benefit whatsoever that ESD could have derived by associating itself with Marttila and her lower priced SLED BITCH T-shirt products.  ESD's products consist of higher-end snowmobile gear and accessories; ESD does not sell mere T-shirt type products, as Marttila does.  In addition, ESD's price range for its products is much higher than Marttila's and ESD does not utilize any offensive words in connection with its products (like Marttila does). Finding that ESD intended to palm off its goods as Marttila's lesser priced, lesser quality goods is akin to finding that one intended to palm off a Mercedes Benz as a Hyundai.  Accordingly, notwithstanding the fact that there is no evidence to support any requisite bad faith intent of ESD, the facts and logic show that ESD acted in good faith at all times.  Accordingly, this factor weighs against a finding of likelihood of confusion.

### 6.       There Is No Evidence of Confusion

Marttila has produced no evidence that any actual consumer or potential consumer has been or is likely to be confused between ESD's DIVAS SNOWGEAR™ mark and Marttila's SLED DIVA FOR THE GIRL WHO LIKES TO RIDE mark.  To the contrary, ESD has obtained an expert report from Dr. Rappeport, who opined that there is no likelihood of confusion.

---

[6] At the time ESD obtained the Trademark Search Report for DIVAS SNOWGEAR™, Marttila's trademark application for SLED DIVAS FOR THE GIRL WHO LIKES TO RIDE was pending in the PTO (and was subsequently rejected).  Marttila's pending application appeared in the Trademark Search Report.  However, this fact does not amount to bad faith because, among other things, ESD did not believe Marttila had any rights to SLED DIVA, ESD did not believe that DIVAS SNOWGEAR™ was similar to SLED DIVA, and, in light of the fact that there were so many references to DIVA and DIVAS in the Trademark Search Report, it is ludicrous to believe that ESD could not use the word DIVAS. In any event, the mere fact that Marttila's application was referenced in the Trademark Search Report does not amount to bad faith as a matter of law.  *See, e.g., Roederer*, 732 F. Supp.2d at 872 ("knowledge of another's goods is not the same as an intent to mislead and cause consumer confusion") (quoting *George & Co. v. Immigration Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009); *Luigino's v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) (same).

(Counterclaim Defendant's Proposed Findings Of Fact, ¶¶77—78)  As of this date, Marttila—

who bears the burden of proof on this claim, has not produced an expert report showing

otherwise.  Accordingly, this factor also weighs against a finding of likelihood of confusion.

Therefore, based on an analysis of the above factors, there is no likelihood of confusion

between ESD's use of its DIVAS SNOWGEAR™ mark and Marttila's use of the SLED DIVA

mark.  As such, all of Marttila's claims relating to ESD's use of DIVAS SNOWGEAR™, as set

forth in Counts I, III and VII of her counterclaim, should be dismissed.

### C.    Marttila's Claim for Cybersquatting Should be Dismissed.

In Count II of her counterclaim, Marttila attempts to assert a cause of action against ESD

under the Anticybersquatting Consumer Protection Act ("ACPA"), pursuant to §43(d) of the

Lanham Act, 15 U.S.C. §1125(d).    Marttila's claim is based on ESD's use of

www.sleddivas.com, which Marttila contends is "confusingly similar to [her] common law

'SLED DIVA™' mark and to [her] domain name www.sleddiva.com." (Counterclaim, ¶103)

Under the ACPA, a cybersquatter is liable to the owner of a protected mark if the

cybersquatter has:

> (i) a *bad faith intent* to profit from that mark; *and*

> (ii) registers, traffics in, or uses a domain name that—

>> (I)     in the case of mark that is distinctive ..., is identical
>> or confusingly similar to that mark that is distinctive.

>> (II)    in the case of a famous mark . . ., is identical or
>> confusingly similar to or dilutive of that mark.

*See* 15 U.S.C. § 1125(d)(1)(A) (emphasis added); *see also Interstellar Starship Servs., Ltd. v.*

*Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002).  Accordingly, a "finding of 'bad faith' is an

essential prerequisite to finding an ACPA violation." *Id.*

Marttila's ACPA claim is deficient for several reasons.  First, for the reasons stated

above, Marttila has no protectable trademark rights in or to SLED DIVA.  Thus, her claim should be dismissed on this basis alone.

Second, even if Marttila has a protectable interest in SLED DIVA, she cannot sustain her burden of proving that ESD acted with the requisite bad faith intent.  In determining bad faith, Congress enumerated nine factors in the ACPA that a court may utilize to determine bad faith. Those factors, as relevant to the facts of this case, are as follows:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> . . .
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> . . .
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> . . .

15 U.S.C. § 1125(d)(1)(B)(I).  Moreover, there is a safe harbor provision in the ACPA: Bad faith "*shall* not be found in any case in which the court determines that the person believed and had a reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii) (emphasis added).

The facts show that ESD did not act in bad faith.  Almost simultaneous with its

registration of its www.sleddivas.com domain name, ESD retained counsel and filed intent to use trademark applications for SLED DIVA® and SLED DIVAS®. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶8—9) ESD was unaware of Marttila's purported use of SLED DIVA at the time. (Counterclaim Defendant's Proposed Findings Of Fact, ¶80) Having received no oppositions to these proposed trademark registrations, the marks proceeded to registration on the Principal Register in the PTO. (Counterclaim Defendant's Proposed Findings Of Fact, ¶11) At no time did the PTO ever raise Marttila's purported SLED DIVA logo as an obstacle to the registration of ESD's marks—indeed, the PTO never mentioned Marttila's purported mark at all.

Moreover, as stated herein, Marttila never operated a website at her www.sleddiva.com domain name. Rather, "used" www.sleddiva.com for the sole purpose of redirecting visitors to her www.sledbitch.com site. (Counterclaim Defendant's Proposed Findings Of Fact, ¶49) Thus, no reasonable person could believe that Marttila had any rights to SLED DIVA or www.sleddiva.com since she was not actually using the domain name. Even if Marttila's registration and "use" of www.sleddiva.com imposes some constructive knowledge on the part of ESD, under the ACPA's safe harbor provision, ESD's subjective reasonable belief that it was permissible for it to use www.sleddivas.com precludes liability under the ACPA.

Thus, as to factor (I), ESD believed it had trademark rights in and to SLED DIVAS®. That is why ESD went through the effort and expense of retaining counsel and registering the SLED DIVAS® and SLED DIVA® mark with the PTO in the first place. As such, ESD did not act in bad faith. *See Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 622 (D.N.J. 2007) (precluding finding of bad faith where defendant was unaware of competitor's use and subjectively believed her use of the domain name was fair or lawful).

21

As to factor (III), ESD used its www.sleddivas.com site for a bona fide purpose of selling and marketing its products. (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶7, 19, 20) ESD actually sold its products on its www.sleddiva.com site.[7] This fact further demonstrates that ESD did not act in bad faith. *See Interstellar Starship Servs.*, 304 F.3d at 947 (party's bona fide commercial use of the domain name weighed against finding bad faith).

As to factor (V), Marttila has come forth with no evidence that ESD intended to divert any of Marttila's customers to ESD's website. To the contrary, the undisputed evidence shows that, after ESD started using its www.sleddivas.com website, ***Marttila's sales more than doubled***. (Counterclaim Defendant's Proposed Findings Of Fact, ¶75)

Moreover, it is more likely that customers of ESD will be (and have been) directed to Marttila's sledbitch.com site because, if they mistakenly leave out the "s" when typing in ESD's www.sleddivas.com site, ESD's customers end up at Marttila's www.sledbitch.com site (by virtue of typing in www.sleddiva.com). Certainly, ESD's customers are not expecting to find offensive SLED BITCH merchandise on ESD's website, as would appear in front of them when they type in www.sleddiva.com. Accordingly, it is not logical or reasonable to find that ESD intentionally would want to affiliate itself with Marttila or her products as that would only serve to harm ESD's reuptation. Accordingly, this factor does not support any finding of bad faith on behalf of ESD.

As to factor (V), ESD never offered or even intended to sell Marttila or anyone else its rights to or registration for www.sleddivas.com. (Counterclaim Defendant's Proposed Findings

---

[7] The instant case is not like typical cybersquatting cases. Typical cybersquatting claims involve "individuals attempt[ing] to profit from the Internet by reserving [and, hence, not actually using the domain names] and later reselling or licensing domain names back to the companies that spent millions of dollars developing the goodwill of the trademark." *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1233 (N.D. Ill. 1996).

Of Fact, ¶21)  The undisputed, overwhelming evidence shows that ESD's only intent was to seek and obtain federal trademark registration of SLED DIVAS®, market and sell its SLED DIVAS® merchandise on its www.sleddivas.com website (and elsewhere), and, upon learning that's someone else—i.e., Marttila—was using SLED DIVA, protect its intellectual property and stop such infringing use (as ESD believed, and continues to believe, that is it the senior user of SLED DIVAS®).  (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶65—72)  These actions of ESD are inconsistent with bad faith and consistent with good faith.

Accordingly, there is no evidence that ESD acted with the requisite bad faith intent that is necessary to sustain a cause of action under the ACPA.  Therefore, Marttila's claim, as set forth in Count II of her counterclaim, should be dismissed.

### D.  Marttila's Unfair Competition Claim Should Be Dismissed.

To maintain a claim for unfair competition, Marttila must show that ESD "intended to mislead or deceive the public into believing that its product was associated with that of [ESD]." *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1155 (7th Cir. 1996) (dismissing claim for unfair competition where plaintiff presented no evidence if any intent to "palm off" alleged infringer's goods as goods of another).  As stated above, there is no evidence that ESD acted with any intent to deceive anyone into believing that its products were affiliated with Marttila. Such a claim defies logic.

Nor is there any evidence that ESD otherwise acted in bad faith.  To the contrary, the evidence shows that ESD acted in good faith.  For example, with respect to ESD's use of SLED DIVAS and related marks, ESD retained a lawyer, who filed intent to use trademark applications for the marks.  (Counterclaim Defendant's Proposed Findings Of Fact, ¶¶8—9)  By filing intent to use trademark applications, ESD put the public on notice of its intention to use these trademarks at some point in the future.  If ESD harbored some bad faith intent to mislead

23

consumers into believing that its goods were associated with Marttila's, it is not logical that ESD would have filed intent to use trademark applications before actually using the marks.

In any event, notwithstanding the evidence of ESD's good faith, Marttila has come forth with no evidence to support her claim. Accordingly, Marttila's claim for unfair competition, as set forth in Count VI of her counterclaim should be dismissed.

### E.    ESD is Entitled to Its Attorneys Fees

The Lanham Act permits an award of "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C.A. § 1117(a). "[A] case under the Lanham Act is 'exceptional'. . . if the losing party was the plaintiff and was guilty of abuse of process in suing." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 963 (7th Cir. 2010). It is "enough to justify the award if the party seeking it can show that his opponent's claim or defense was objectively unreasonable—was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent—in other words only because it was extortionate in character if not necessarily in provable intention." *Id.* at 965.

Here, Marttila's appears to be extortionate. There is no legitimate purpose to Marttila's counterclaims given that she has no rights in or to SLED DIVA, and ESD has rebranded itself as DIVAS SNOWGEAR™ (even though it had no legal obligation to do so). Moreover, Marttila testified that she was unaware of ESD's use of DIVAS SNOWGEAR™—yet she continues to pursue her counterclaim, seeking a forfeiture of ESD's intellectual property rights (and transfer of such to her), and money. (Counterclaim Defendant's Proposed Findings Of Fact, ¶ 76)

ESD is a startup company with no employees, $40,700.00 in gross revenues for 2010, who sustained an overall loss of over $20,000.00 for 2010, and who has yet to turn a profit. (Gavinski Dec. ¶¶28—30)   Nonetheless, it appears that Marttila's conduct is designed to improperly induce ESD into giving up its intellectual property rights and handing them over to

24

her, especially since the PTO already determined that Marttila has no rights to SLED DIVA (and ESD does). Thus, Marttila's continued prosecution of her counterclaim is not only extortionate, it may be in violation of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, ESD reserves the right to request reimbursement of its attorney fees and costs incurred in defending Marttila's bad faith action.

## III. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order granting its motion for summary judgment and dismissing Marttila's counterclaim with prejudice.

Dated: December 1, 2011                    KLEHR HARRISON HARVEY
                                           BRANZBURG LLP


                                    By:    /s/ Brian R. Fitzgerald, Esq.
                                           Lisa A. Lori, Esq.
                                           Brian R. Fitzgerald, Esq.
                                           1835 Market Street
                                           Philadelphia, PA 19103
                                           llori@klehr.com
                                           bfitzgerald@klehr.com
                                           (215) 569-2700 (phone)
                                           (215) 568-6603 (fax)

                                           *Attorneys For Plaintiff*
                                           *Extreme Sports Divas, LLC*

25

**IN THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

EXTREME SPORTS DIVAS, LLC

<table>
<tr><td>Plaintiff,</td><td>No. 3:11-CV-00032 (WMC/SLC)</td></tr>
</table>

vs.

ELIZABETH J. MARTTILA individually
and d/b/a SLED BITCH

Defendant.

**ORDER GRANTING
PLAINTIFF/COUNTERCLAIM
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

THIS MATTER having been opened to the Court by Plaintiff/Counterclaim Defendant, Extreme Sports Divas, LLC ("ESD")., by and through its counsel, Klehr Harrison Harvey Branzburg LLP, for an order granting summary judgment in favor of Plaintiff/Counterclaim Defendant and against Defendant/Counterclaim Plaintiff Elizabeth Marttila ("Marttila") individually and d/b/a Sled Bitch; and the Court having considered the papers submitted in support of the motion and any opposition thereto, and good cause appearing;

IT IS on this _____ day of _____, 2011, ORDERED as follows:

ORDERED that summary judgment on all counts of Marttila's counterclaim be and is hereby entered in favor of Plaintiff/Counterclaim Defendant and against Defendant Elizabeth Marttila individually and d/b/a Sled Bitch.

A copy of this ORDER shall be served upon all parties within ten (10) days of receipt by Plaintiff's counsel.